From Case Long Island, 2-17-0214, Edmund C. Elmhurst Imports, Inc. v. Safeway Insurance Company, Defendant Elmhurst, arguing on behalf of the defendant's family, Ms. Hillison. Good morning. Good morning. We have a court and counsel. I represent Safeway. The trial court ruling in this case changes contract law in a fundamental way. The ruling essentially allows a stranger to interject itself into the private contract between two other parties. It allows a stranger to the contract to change the terms of that contract entered into between the other parties without the consent of the parties to the contract. Parties have a right to contract between themselves and decide on whatever terms they want in their contract, as long as the terms are not against public policy. The court must not defeat the freedom to contract by allowing outsiders like Napleton to change the parties or the terms of the contract. If the court is going to allow such a thing, then you have to wonder where does it all end? Where is there a limit on who gets to change the contract terms? How do you force a contract if anyone can change it at any time? In what terms can an outsider change the contract? It's particularly troubling because this is an insurance contract which is regulated by the Department of Insurance and the insurance code. And how does a car salesman change an insurance policy and keep it still in compliance with the Department of Insurance regulations and insurance code? This was a summary judgment, wasn't it? Yes, it was. Did anybody discuss whether or not the fact that the contract or some major document was typed except for one aspect of it? Are you talking about the insurance policy or the car salesman? I believe I'm talking about the one where I thought Napleton's name was written in. I believe that was discussed in the trial court. I believe it was discussed in the trial court. Okay, why wasn't it a material issue of fact? I believe there was a material issue of fact as to... And why should summary judgment have been granted? It should not have been. Pardon? It should not have been. The court granted summary judgment in favor of Napleton. The court should not have done that. On the other hand, it's uncontradicted. Safeway's testimony of Ms. Devine, Ms. Contos, was uncontradicted that Napleton was never added to the policy. In fact, no one was ever lost pay on this policy. Mr. Johnston did contact his broker to have the key added to the policy, but no one ever asked Safeway to add Napleton or any lost pay to this policy until after the accident when Napleton contacted Safeway and asked to be added as a lost payee. By then it was too late, and Napleton didn't have the right to add itself to the policy without the consent of Mr. Johnston. Mr. Johnston signed an insurance acknowledgment agreement, right, at the deal? I don't know. That's what Napleton argues. Mr. Johnston never appeared in this case, so we never heard from him, and we don't know what Mr. Johnston has to say about that. Napleton represents that Johnston signed this agreement. Napleton admits that it changed some of these agreements after Johnston signed them by changing Santander at Napleton. But there was no reference in that agreement or the insurance acknowledgment, no reference to Napleton as the lost payee, correct? I believe that's correct. Are you asking for a reversal because there's a material issue of fact and therefore the matter should proceed to trial, or are you asking for a reversal and can affect summary judgment in your own favor? And why, I guess. I'm asking for a reversal. I do think summary judgment would be appropriate in favor of Safeway, not on the reasons that Napleton is arguing, but just on the bare fact that we have the Safeway contract. No one's contesting that these are the terms of the Safeway contract. We have the uncontradicted testimony of both Mary Ann Kondos and Lord Vine who said there never was a lost payee on this policy. No one ever contacted Safeway to add a lost payee to this policy until after the loss. And we have the uncontradicted testimony of Ms. Kondos who said, no, we can't backdate the lost payee. We can't add a lost payee retroactively once there's been a loss. Well, you insured the car. Correct. And if there was so someone is at the loss, either the driver or the title holder, shouldn't one or the other of them be able to recover on this policy? Mr. Johnson has a right to make a claim if he so desires. He did initially make a claim, and for some reason, unknown to either party, he withdrew that claim. He made a formal withdrawal of that claim. Did he not want Safeway to investigate the accident for some reason? We don't know. But he not only didn't comply with Safeway's investigation of the loss, but he formally signed a withdrawal of the claim, so it wasn't pursued any further. If Napleton wants to recover for the car, Napleton's free to sue Mr. Johnson in liability, and Safeway would then have an obligation to defend, I mean, in tort. And Safeway would then have an obligation to defend Mr. Johnson under the liability coverage of the policy. Whether or not Napleton can state a claim against Mr. Johnson for tort, for negligent destruction of this car, I don't know. But they have not chosen to have done that. What they've done in this case is they've tried to make a collision claim, essentially a first-party claim under the policy, claiming as if Napleton itself isn't insured under the policy, which it is not. And Napleton is saying that it's a lost payee, so Napleton is trying to claim directly against Safeway, but Napleton just wasn't a party to this contract, wasn't a party to the policy. Does it matter what type of lost payee? In other words, Napleton's claiming they were a lost payee. Does it matter what kind of a lost payee? I'm not sure if there are different types of lost payee. If Johnson requested someone to be added as a lost payee, whether it was Santander or Napleton, presumably Safeway would have processed that and added a lost payee. I don't know if there are any additional requirements to add a lost payee. Maybe Safeway would have checked to see that they had an insurable interest. I'm not sure. Can you be a lost payee if you're not on a contract on the insurance coverage? No. You wouldn't be able to have a secured interest that might indicate that you might be in pension proceeds if they were paid out correct or incorrect? I think that's correct. A lien holder is different from a lost payee. A lost payee takes its rights under the contract, under the terms of the contract. A lien holder takes its rights as a matter of law, under statute or case law or whatever it may be, but not under contract. And it may well be that a Napleton is a lien holder, but that doesn't make them a lost payee. Would a lien holder have the right to come against the insurance company if the insured who was the beneficiary or the debtor on the lien didn't ask for the proceeds? No. If there's no obligation for the insurance company to pay out to the insured or anyone who has a right to enforce the policy, then there's nothing for the lien holder to collect. A lien holder strictly takes its benefits or rights subject to... A lien holder takes the debtor as the debtor is, so to speak. Right. It takes subject to any defenses that the insurance company may have as to the insured. So when Johnston withdrew that claim, any claim that the lien holder may have... What was the basis for Judge Wheaton's ruling? I don't know. I don't know, and that's why we appealed. I think it goes against fundamental contract law, I think it goes against insurance law, and it makes a bad precedent. This allows an outsider to change an insurance policy. And it's not just changing the parties of the policy, but it's also changing terms of the policy. The policy on its face says any change to the policy must be made in writing, a written request to change, and that wasn't done. Nableton's best argument is that sometime weeks, days or weeks after the accident, when someone from Ed and Nableton called and talked to low-level claims or up on the phone, that claims rep made a cryptic note in the claims log talking about Nableton would be added as a lost payee. Nableton interprets that as saying SACWI at that point made Nableton a lost payee. Well, you have the deposition testimony of Ms. Condos and Ms. Devine, which contradict that and say, no, she was just writing down what the conversation was, but whether it was Nableton saying this to her or her saying this to Nableton, there's no evidence that Ms. Gronin said during that conversation, okay, Ed and Nableton, yes, we're bestowing lost payee status on you. Even if you accept that, that interpretation is correct, saying, okay, from the date of this conversation, Ed and Nableton is a lost payee under this policy. That's still after the accident. And there's no evidence that anyone backdated the lost payee. You know, even if you assume that they were made a lost payee, there's no evidence that it was backdated, no evidence that SACWI ever agreed to extend coverage retroactively to Napleton or anyone else. And there's no intention that, I mean, there's no evidence that Johnston ever intended Napleton to be a lost payee on this policy. At best, if you look at the documents that Johnston supposedly signed, it shows Santander as a lien holder. Perhaps Johnston intended Santander to be a lost payee. We don't know. He never requested that. But clearly he didn't intend Napleton to be a lost payee, because Napleton wasn't even on the contract that he allegedly signed. It was Santander. Santander was the other – was the original loan provider? Is that what it was? I believe Santander was originally intended to be the finance company, but the loan fell through. Okay. That's my understanding. The loan fell through, and that's why Napleton tried to pull this back. But Napleton let him drive off the lot without getting proof that they were covered or that Santander was covered. Napleton says, well, it's impractical to require written confirmation. No, it's not. If you're in the business of selling cars and you want to protect your interests in the car, you can wait a day or a couple of days to get confirmation that you're covered or you have your own insurance policy, which they probably did. Let me ask you a question. Let's assume for the sake of argument that the contract here is sufficient to make Napleton a lost payee. Let's assume for the sake of argument. Does, in your opinion, give them an independent right against you, or is any rights they have dependent on the actions of Mr. Johnson? I think their rights are still limited by what Mr. Johnson did. And why? Because the lost payee's rights are derivative, much like a lien holder. They have contractual rights. Who said derivative of a lien holder? I'm sorry. Like a lien holder, not derivative of a lien holder. I don't think the lost payee has any greater rights than the named insurer. If he waives his rights, theirs are waived contractually. Is that your position? Quite sick. Thank you. Did I say that right? In other words, if Mr. Johnson waives any rights he has under the policy, by doing that, is it your position that then even if Napleton had status as a lost payee, that is dissipated when Johnson waives his rights under the policy? I think Napleton, if it were a lost payee, could still make a claim as a lost payee, but they would have to comply with whatever requirements that were in the policy. You said earlier the same defenses that you have against Mr. Johnson. Yes. For instance, if it were excluded. But if they each have an independent right to make a claim as a named insurer, for instance, if there are two named insurers and one decides not to make a claim but the other does, I don't think one named insurer waiving the rights to make a claim can defeat the other. So if Mr. Johnson was uncooperative, but Napleton was, they wouldn't lose their rights under their vote if they were a lost payee? If they were a lost payee. I'm not sure if there were any other problems. I don't think that was fully flushed out because Mr. Johnson just didn't comply with the investigation. So if you find that Ed Napleton was a lost payee, then I think in that instance the case would have to be remanded for further proceedings. But I think it's clear that Ed Napleton was not a lost payee. Again, for purposes of summary judgment, the uncontradicted deposition testimony of Mr. Biden's condos has to be accepted as true. Napleton has come up with nothing to show that it was a lost payee. All the contracts show that it was not. You're saying that it should be reversed because the uncontroverted manifesto evidence was against the grant of summary judgment. Well, I don't think they said it exactly that way. It's kind of an oxymoronic statement to suggest that in the summary judgment proceeding, that the ruling that the trial court made was against the manifest way of the evidence. Because when you do that, you supposedly are supposed to be giving deference to issues relating to credibility, et cetera. Well, Napleton proceeded with their motion for summary judgment on different grounds than Safeway proceeded to its motion for summary judgment. It's almost as if we're talking about different languages. They're hanging their hat on different facts, saying we're a lien holder. It was the intention of Johnston to make us a lost payee. And we're saying, no, the contract shows you're not a lost payee. That alone, we win. You're not a lost payee for that reason. Safeway wins. But it's interesting to note that Napleton has never argued that it was a third-party beneficiary to this contract because it couldn't. Clearly, Johnston did not intend to benefit Napleton by this contract. And under the law, there's a strong presumption that parties to a contract intend to benefit only themselves by the contract. And, again, especially because this insurance company — If somebody were a third-party beneficiary of a contract, wouldn't the best evidence be that they were a lost payee? That they were listed as a lost payee. Right. But Napleton didn't even make that argument. I presume because they realized they couldn't. They've got no proof that Johnston ever intended Napleton to be a lost payee. All they have is the documents that Napleton itself altered after Johnston allegedly signed them. Does the record reflect whether Mr. Johnston is judgment-proof? It does not reflect that. Again, this is a safe way to change the policy to add the car. There's no question that if Mr. Johnston wanted to pursue a claim, SAFER would investigate it and either pay or deny it accordingly. But that didn't proceed to that because it was withdrawn. Liability coverage is a different story. If there are no more questions. No, you'll have a chance or an opportunity to make a rebuttal. Thank you. Mr. Sansone. Police Court. I have the pleasure to represent the plaintiff, Eppley, at Napleton Elmhurst Imports. I know you don't need a full recitation of the facts, but I do believe for our position that the timeline of events here is very critical. On August 7th, 2014, Mr. Johnston purchased his Kia Soul at the Napleton dealership. And while there, he had to fill out certain paperwork. One of the things he had to fill out was to show that he had insurance. He represented that he was not covered under the policy with Safeway. And he signed an insurance coverage acknowledgement with the dealership that indicated that the dealership would be made a lost payee on his policy. He contacted Safeway. Safeway immediately changed the policy to include this new vehicle and cover that vehicle from that time going forward, his Kia Soul. Seven days later, Mr. Johnston crashes and totals the car. Napleton reports it to Safeway. Napleton explains that they're going to make a claim because Mr. Johnston just bought this vehicle, never paid for it. He financed the vehicle. And that Napleton was going to make a claim as a lost payee, as it was represented by Johnston that they would be. The very next day, August 16th, Safeway sends a letter to Mr. Johnston's broker asking for this endorsement to be filled out and signed. So apparently at that time, Safeway had not completed all the documentation they needed to do to transfer over this vehicle in their insurance policy. They were already made aware by that point that Napleton was making a claim for this vehicle as the title holder. Safeway then received a copy of this insurance coverage acknowledgement that Mr. Johnston signed with the dealership on August 18th, showing that Napleton was supposed to be a lost payee on the policy. There's then a conversation between Safeway and Ken McTeo at the Napleton dealership on August 21st, just three days later, where the claim notes state that Napleton will be listed as a lost payee and can pursue their claim without Mr. Johnston, even though he's withdrawing his claim. They just needed to repossess the vehicle to show proof of the title. Johnston called, canceled his claims. Napleton provided Safeway with the title and Safeway denied the claim. A lost payee can bring suit for their own, for the insurance here, as stepping into the shoes of Mr. Johnston. Whether or not he wants to make his own claim is completely irrelevant. Napleton can go forward as the lost payee. How can you do that without being a party to the insurance contract? Because he was, Mr. Johnston's intention was to have. Now, where's the evidence of that? In the insurance acknowledgement agreement. And I noticed that you said we were supposed to be the lost payee. Where was any confirmation of that? In other words, Mr. Johnston could have told you that I insured the car for $1 million, and you're the lost payee, but he didn't do that. Right, but he signed the acknowledgement that he was going to make them a lost payee, that they would be listed as a lost payee, I should say. Right, but do we just accept that's the truth, that's what he did, he had all his ducks in a row? Apparently, it wasn't done. Well, it wasn't done because Safeway is the company that needs to make that change on the declarations page. And it wasn't done in the self-serving failure on the part of Safeway to avoid having to pay in this type of situation here. Napleton can't change the declaration page. Mr. Johnston can't change that page either. Only Safeway can do that. So at the time when this documentation was going back and forth with the endorsement that needed to be filled out and signed by the broker, Safeway was already aware that Napleton was making a claim here. They already then, I'm sorry, the following day or two days later, they received a copy of that insurance coverage acknowledgement showing that Mr. Johnston intended to have Napleton as a lost payee on the policy. That's what was written on the insurance coverage acknowledgement? Right. Do we know who it was written by? Did Mr. Johnston write that in or did someone else? No, it's a pre-printed form. Right, but it's not pre-printed on there, it's handwritten in, right? On the insurance coverage acknowledgement? About them being lost payee? Yes. Right, it does appear, yes, it looks like that was handwritten, named lost payee Napleton. And do we know who wrote that in? I don't know if that came out, to be honest with you, if anybody testified about that. There's not a separate document that showed this was unsigned or that it was not filled in at the time that Mr. Johnston left the dealership. This is the only version of that document. Those could be considered to be questions of fact, couldn't they? No, I disagree because all we have here is documentation from the dealership that shows at the same time that he purchased this vehicle that he had coverage from Safeway under that policy, the direct policy number that it was going to be switched to the Kia Soul. Everything matches up identically with what was going on that day at the dealership. What case authority or statutory authority do you have where a stop would arise against an insurance company based upon an insurer's false statements? Your Honor, there is no proof that this was a false statement by the insurer, Mr. Johnston. There's no proof that it's a false statement? No. There's no proof it's a true statement. What Mr. Johnston did was he filled out the paperwork to show Napleton that they were going to be covered. He contacted Safeway to make sure that this change was going to be made, and Safeway agreed that this change was made, the vehicle was going to be covered going forward. So the paperwork then... Was your loss paid in his insurance policy before he bought this vehicle? No, there's no one listed. So when you say he was having this car covered under this insurance policy, he also had the intent and the wherewithal to understand that not only was he asking for the same coverage with liability, etc., but he was also asking that you be added as a loss payee. Is that correct? Yes. And how do you know that? Did Mr. Johnston say anything to that effect? He didn't testify in this case, so there's no deposition, testimony, or affidavit from Mr. Johnston. But we do have his signature on the documentation showing that he understood that this was going to be a contract where he needed to have insurance, he needed to have at Napleton Elmhurst Imports as a loss payee on the policy. And the fact is that Safeway is trying to indicate that only their agent or policy producer can request someone to be added as a loss payee, but there's no language like that in their policy. There's also no language in their policy that a loss payee can't be added retroactively. I know that's one of their arguments, but there's nothing in the policy that says that. And the fact that there's a conversation between Safeway and the dealership where Safeway... What's the point of having any changes to the policy be in writing if it can be retroactive or presumably retroactive? Well, the policy can be changed in writing to add at Napleton Elmhurst Imports as a loss payee, just like it was identified by Safeway that that's what was going to happen, that they were going to add them as a loss payee on this policy. Is there anything in the insurance policy contract that provides that upon a change in writing that the premium will be redetermined based upon the amendment to the contract? No, there's nothing. So this contract really is very poorly written. I wouldn't agree. I see. I just had a curiosity. Why didn't your client sue... Mr. Johnson? For the destruction of the vehicle or damages to the vehicle? We did sue Mr. Johnson under a breach of contract theory. It was a negligent accident. I think it was a one-vehicle accident, to be honest, where he ran off the road. So he committed property damage, which would seem that the insurance policy would cover, would it not? I'm not exactly sure. I mean, I know there was collision coverage, but... I mean, if he intentionally drove this into a tree, I don't know that they would be required to pay him. Right. And we don't have any knowledge if this was an accident or was intentional. So that's why there wasn't a claim made under those grounds. Nagleton's rights as a lost payee also are not dependent on whether or not Mr. Johnson pursues his claim. It's illogical any time an insurer chooses not to make a claim to then disrupt the rights of the lost payee to make a claim on their own behalf. And Safeway even acknowledged in the conversation with Ken Mateo that they could go ahead and make their own claim regardless of whatever Mr. Johnson was going to do, regardless if he was bringing his own claim or not. Nagleton steps into the shoes of Johnson. They have the right to bring this claim. They are the title holder. They own this vehicle, and this vehicle was insured by Safeway. They are entitled to the proceeds of this insurance contract, and that's our position. What was the rationale that Judge Wheaton related when she granted some of the judgment? Judge Wheaton found that the facts were indicative that Nagleton was a lost payee under the policy, that the conversation between Safeway and Nagleton where they informed Nagleton that they were going to make them a lost payee under the policy, that that was controlling. And she found that the testimony by the two witnesses trying to interpret that claim note was hearsay, and she disregarded their testimony on that issue. That sounds to me like she's making judgments on material issues of fact. Well, she determined there wasn't a material fact there because you have the claim note, the testimony about how these people interpret the claim note. That was not a fact. It was not a fact that there was a conversation. The only question then was it was a question of what it meant. Correct. Continue until the bell rings. Okay. Any other questions? Thank you. Thank you. Ms. Hillerson. Thank you. I would direct your attention to page C38 of the record, which shows that. Speak a little louder, please. I'm sorry. I direct your attention to page C38 of the record, which shows that the endorsement adding the Kia Soul was printed on August 7th, 2014, which is the same date that the sales contracts and insurance coverage acknowledgement were allegedly signed by Johnston. So contrary to what Mr. Sansone said, Safeway wasn't dragging its feet on this processing the policy change in order to see whether or not they'd have to pay a claim. Safeway processed this quickly once it was notified of requested change. It added the Kia to the policy. It did not add Napleton or any other loss paid to the policy. I would also point out on C13 and C11, the same handwriting showing. It's the same handwriting writing in Napleton import or Napleton Elmhurst imports where Santander was crossed out. Napleton admits that these changes were made after Mr. Johnston had signed these documents. So again, nothing in that could grant Napleton any rights under the policy. And Safeway wasn't a party to any of these agreements between Napleton or Santander and Johnston. So Safeway is not bound by any of these agreements. If Johnston signed something saying, yes, Napleton or yes, Santander, I'll add you to my policy as a loss payee. That does not bind Safeway. Safeway wasn't aware of it, wasn't a party to it. Safeway doesn't have to, doesn't have any obligation to follow through with that. When you say Napleton admitted that the changes were made after he had signed the documents, do we have anything more definitive like that same day after, while he was still in the store, after he left the store, tomorrow? In response, we don't have the exact date, but we know it was after he signed it, without his knowledge. And not in his presence. That was in the response to the request to admit. So without Mr. Johnston's knowledge. Correct. Did that include the handwritten edition of Napleton as loss payee? Do we know that? I don't remember that. If you, clearly they admitted that Santander was crossed out on the, on page C11 and written in at Napleton Elmhurst Imports. And if you look at C13, which is the insurance coverage acknowledgement, you'll see it's the same writing, adding in Napleton Elmhurst Imports. And it appears there was something else underneath it at first, but it's not, we don't have a clear copy of it. So. Napleton sued Johnston for breach of contract, not for tort. If Napleton sued Johnston for tort, saying you were negligent, your negligence approximately caused the damage to this vehicle, and for whatever reason, Napleton thinks they have a right to recover for damage to the property, then there's no question that Safeway would have to step up under the liability coverage because this car was covered and defend Mr. Johnston. And if Napleton were to get a tort judgment against Johnston, then, you know, absent any other exclusions or barriers, then Safeway would owe coverage for it. That's not what happened in this case. In this case, Napleton is making a direct action against Safeway and suing Johnston for breach of contract. Breach of contract claim is not in any way, shape, or form covered under the Safeway policy. It doesn't come within the liability coverage, inclusion coverage, or anything else. So Safeway had no duty to defend Mr. Johnston in this case. It's basic insurance law that only the parties and property that were insured at the time of the loss are covered. That's how insurance works. No one would buy insurance if you could go out and have an accident and then say, oh, by the way, I want to insure that car that I've been driving around and it just caused an accident. That's not how insurance works. The ruling in this case fundamentally changes both contract law and insurance law, and it should not stand. I ask that you reverse the judgment, the summary judgment, either with or without the amendment. And counsel pointed out that Judge Wheaton's ruling was based on her interpretation of the claim notes. If that is the case, then certainly the summary judgment should be reversed because that is a question of fact, interpreting those claim notes. Again, we have Ms. Devine's deposition testimony saying that, no, that's not what the claim notes meant. This was her brief notes of the entire conversation. This was probably Napleton telling her that they were going to be covered, not the other way around. That would be a question of fact and reason to reverse the summary judgment. Thank you. Thank you. Time is up. We'll take the case under advising until we shortly assess the other cases on the call.